May it please the Court, my name is Scott Lopez, and together with Attorney Joshua Siegel, we represent the appellant Rainbow Treecare Scientific Advancement, whom I shall refer to as Rainbow. I'd like to reserve two minutes for rebuttal. Yes, that'll be deducted from your opening time. And request the Court's permission to allow Attorney Siegel to argue rebuttal. Yes, that's fine. Thank you. This is an appeal of a preliminary injunction prohibiting Rainbow from selling a product called ArborMectum. Now, prior to the Court's entry of that injunction, Rainbow was the exclusive distributor of the product in the United States. The product was developed and created by a company called Rotam North America. Now, Rainbow is appealing the District Court's decision to enter a preliminary injunction because the Court committed clear error when it found that Rainbow engaged in affairs intended to replicate an ArborJet product called Triage. The Court compounded this factual error and committed legal error when it erroneously interpreted the contract language, the term replicate, in the party's agreement to mean a product similar to ArborJet's product, Triage. Finally, the Court committed legal error when it prohibited Rainbow from using certain ArborJet trademarks after finding no likelihood of success on ArborJet's trademark and corresponding state court claims. Why do you assume that the last part of the injunction, the preclusion of using ArborJet's name or its trademark without attribution, is necessarily on the trademark counts? It is a breach of contract count where the breach of contract here, in the District Court's view, caused injury to the reputation and goodwill of ArborJet, presumably because, acting under what the District Court perceived as a breach, your client had referred to its product as improved Triage without any use of the registration mark or permission from ArborJet. First of all, Your Honor, the Court found that there was no likelihood of success. I know, but I'm saying leave the trademark counts out. Why isn't that, why isn't that proper relief on the breach of contract count if, if the breach of contract count, if the Court was correct in determining that the breach of contract count resulted in a likelihood of success? Your Honor, it's unclear to me from the record because the Court didn't say. Oh yeah, it's unclear to me too, but isn't that logical? The Court did say that its concern in granting the injunction, its concern on the irreparable harm prong, was with, was with damages or harm, prospective harm to the goodwill of, of ArborJet. And, and how else would the goodwill be harmed except if your client continued, without permission, to use the name and without attribution, the trademark of ArborJet's product. Your Honor, I would be inclined to agree with you if the Court had said that, but the Court did say that there was no likelihood of success on those claims, and then proceeded to enjoin us from using trademarks even though ArborJet had no likelihood of success on those claims. What is, what is the significance, as I understand it, of your client's agreement that it would not use the copyrighted term in the same sentence with the word improved in, in any future public statements or releases? Does that, does that affect the, the right to complain about this order? Well, Your Honor, that was a position by our client as a result of the district court's request that we consider some alternative language, and we had preliminarily agreed to do that pursuant to settlement discussions, which fell apart, and then the Court went ahead and imposed this requirement. Oh, so you say there was no continuing agreement to that effect? Not to my knowledge, Your Honor. I see. Now, Your Honor, with respect to the Court's error of fact, the Court below specifically found that Rainbow developed this product ArborMectin. The evidence in the record establishes conclusively that that's not the case. In fact, Rainbow, ArborJet's own complaint alleges that the product at issue here, ArborMectin, was manufactured by Rotam of North America. Yes, but there, there was evidence that was important to Judge O'Toole's determination that your client participated in, in testing of a product that was then shared with the ultimate manufacturer, and that that, that testing was an important step in the ultimate production of this product, and by engaging in that testing and sharing it with the manufacturer, that violated the very explicit terms of the agreement with ArborJet. What, I don't, it's hard to see how in, in light of this record, putting aside the issue of what replicate means, that we could conclude, and in addition to that, there were some statements by employees of your client that suggested that there was an effort to develop a product that would compete with the triage. In light of all that, how can we say that, that, that factual finding that's at the heart of the preliminary injunction is clearly erroneous? Because the finding is clearly erroneous when there is some evidence to support it, but the reviewing court, on the, on view of the entire evidence, is left with the firm conviction that a mistake has been committed. In this case, there was no finding that those research, those, the testing that was done, first of all, there was no allegation that, that testing was ever shared with Rotam. There was no evidence that, that testing was shared with Rotam, and in fact, there was... We're not confined to the allegations. I mean, there was evidence developed in, in, in support of the allegations, and the court considered that evidence in, in, in making this ruling. Actually, the court didn't mention anything about the alleged admission. No, no, but what it mentioned and what it considered are two different things. Verb is important, counsel. I understand, Your Honor, but on this record, there's no way to know whether or not the court considered those other pieces of evidence... Isn't there a presumption that the court considers all the evidence that's before it? Your Honor, in this particular case... Now, just answer my question. Isn't that a standard presumption, that the court considers all the evidence that's before it? Yes, Your Honor. I mean, we have, we have motions decided, you know, one word, affirmed, denied. Court doesn't spell out its findings, necessarily, and, and the court made some effort to spell out its findings here, but, but what it, what it said in doing that isn't necessarily exhaustive as to the source of its reasoning. Your Honor, not only was there inadequate evidence to support the court's erroneous error of fact, but when the court then compounded that error by interpreting... May I finish? Yeah. By, by interpreting the contract, which was an unambiguous contract, and substituting the word, similar for the word replicated, replicate, the court committed legal  error. Good morning, Your Honor. It's Kristen Scammon for ArborJet. I wanted to first briefly address Justice Sotomayor's... Before you start, can I ask you a question that we haven't addressed yet? Where's the irreparable harm here? The irreparable harm is, as found by Judge Will, but that injury, that injury, irreparable harm is a prospective doctrine. That injury is cured by the portion of his injunction which says you can't refer to three-age or ArborJet unless you use the trademark, etc. So there's, there's no, there's no continuing prospect of, of harm to ArborJet. There may be damages owed to what Rainbow has already done, but I'm, I'm really struggling to see where the irreparable harm is here. I'm happy to address that, Your Honor. Okay. The irreparable harm from the breach of contract, which was, was found likely to be proven by Judge Borton, stems from the fact that Rainbow has served as an ArborJet distributor of all of ArborJet's products, including triage, for many years before it started then distributing this competing product that it had tested over many years while under contract. Not to do so. Right. So the harm to ArborJet's reputation and customer relationships comes from a distributor who customers and users had taken to be affiliated with ArborJet and as ArborJet's distributor is now distributing another product that caused confusion among customers as to the source of that product. Is it an ArborJet product? So, so, so you're, you're saying that, that the contractual language that we've got here is sufficient to really put Rainbow out of business? That because it's been an ArborJet distributor that customers may deem any product that Rainbow distributes to come from ArborJet and that harms ArborJet's goodwill? I don't follow. No, I would, I would say that the contractual language at issue here would, would only preclude Rainbow from selling a product that was developed in violation of the contract. Yeah. And this particular product was because during the time that Rainbow served as an ArborJet distributor, it engaged in affairs intended to replicate triage. Okay. And those affairs were testing ArborMectin for three years before it was approved by the EPA to be sold. And so it wouldn't put Rainbow out of business if it didn't violate the contract. The, the, the contract's now terminated. If they, they can develop whatever they want. Does, does, does your argument in support of the injunction depend on us interpreting replicate to mean copy or duplicate? I believe it doesn't, Your Honor. Okay. I believe that Judge Gorton was absolutely correct in his interpretation because the language as a whole of the contractual provision is affairs intended to replicate. And the definition of replicate is really, I don't want to say a red herring, but it's not overly relevant. So, so your position is that by doing research and trying to develop or find another product that would perform the same function, whether or not it actually duplicated triage, that Rainbow had engaged in affairs intending to replicate? That, that's correct, Your Honor. And there was a lot of ample evidence that the district court relied on that was in the record, including the email you referred to earlier, referring to ArborMectin as improved triage. In their reply, Rainbow even admits that these products have the same active ingredient. They have, they serve the same purpose. They treat the same pests. They're intended to do the same thing. The minimal differences that were raised with the district court he found to not be consistent with the intent of the contractual language. I just wanted to go back to Justice Souter's question about the letter that was submitted regarding the use of the trademarks. I believe that that letter did, was a continuing obligation. That the letter did say that Rainbow would agree to continue to do that and that Judge Gorton entered that in his order as essentially part of his order. Was there any indication in the record that that letter, despite what it might say on its face, was simply a portion of a proposal for settlement so that its effectiveness would terminate on the termination of settlement negotiations unsuccessfully? No, Your Honor. I can pull the letter out. It's page 268. I take it there's nothing on the face of the letter that says we're only promising this on the assumption that we end up settling with you. That's not true, Your Honor. Counsel, what do you understand is the basis for the injunction with respect to the use of the ArborJet trademark? What is the basis for that as you understand it? My understanding, as we've all recognized, the basis was not fully set out by Judge Gorton, but my understanding is that he found that there was confusion in the advertising of this product. And that the product was, we were likely to prove that the product was produced in violation of the contract between the parties. And that he was trying to preserve the status quo and say this confusion needs to stop here while we go through the merits of this case. So the fact that he found no likelihood of success on the Lanham Act claims doesn't affect the appropriateness in your view of that injunction? That's correct, Your Honor. With regard to the other arguments, I would stand on my brief and just conclude by saying that Judge Gorton did not abuse his discretion. There were no errors of law. He interpreted the contractual language as a whole and found a likelihood that ArborJet will succeed in proving that Rainbow, while under contract not to do so, engaged in affairs to replicate triage. And the result was ArborMech. Insofar as contract law is concerned, my sense of the record is the parties are not challenging Judge Gorton's determination that Massachusetts law supplies the rule of decision? That's correct. Okay. Thank you. Rebuttal? May it please the Court, just to quickly answer Judge Salyer's last question, we also concur not challenging that Massachusetts law applies. I appreciate that. Thank you. There are two issues here on this appeal. The first is whether testing a product is an affair intending to replicate it without any evidence that those tests or those results from those tests were presented back to the manufacturer and developer of that product. We submit that it is not sufficient. Isn't there a circumstantial evidence to that effect? They didn't test it in the way that a possible dealer might test a product to see whether he wants to be associated with it. There was a lot of testing here. And it seems to me that anyone could infer from that that there was something more afoot than simply satisfying the company doing the testing on the question whether it might want to sell this stuff. To the contrary, Your Honor. The testing was done among different brands of products, some of which Rainbow had distributed, others I believe they had not. And it was in different environments and around the country for a national company to see how this particular product worked in different situations before they would agree to distribute it. How many tests did they run on the disputed product? My understanding is that there were 10 or 11 alleged in all and only a portion of those were done during the contract period. No, but what was the subject of, how many times did they test the newly developed product? It was part of, I believe, that number of studies. And at a given time it was a small group of trees and we test three trees. Do you know the answer to my question? I asked for a number. Oh, and I believe it was 10 or 11. Okay. The second issue was whether a replication, whether the product, the new product has to be a replication. And there are significant differences, which we will see in the brief. Thank you. Thank you.